**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **WILSON WAI,**<br><br>    Plaintiff,<br><br>    v.<br><br>**MARQETA, INC., ET AL.**,<br><br>    Defendants.<br><br>**DAVID FORD,**<br><br>    Plaintiff,<br><br>    **v.**<br><br>**MARQETA, INC., ET AL.**,<br><br>    Defendants. | **Case No.: 4:24-CV-08874-YGR**<br><br>**ORDER CONSOLIDATING CASES, APPOINTING LEAD PLAINTIFF, AND APPROVING SELECTION OF LEAD COUNSEL**<br><br>Re: Dkt. Nos. 20, 24, 27, 36, 37.<br><br>**4:24-CV-08892-YGR** |

Both above-captioned cases are putative class actions alleging violations of federal securities law and stemming from the same series of transactions. Following published notice of the action, two non-party movants, Tyler Hogge and Paul Dellock, each request consolidation of the above cases and appointment as lead plaintiff along with appointment of their attorney as lead counsel.[1] (Case No. 4:24-cv-08874-YGR, *Wai v. Marqeta, Inc.*, Dkt. Nos. 20, 27.)[2] For the reasons set forth below, Hogge's motion is **GRANTED** and Dellock's motion is **DENIED**.[3]

---

[1] Neither plaintiff in whose name the respective actions were filed moves to be appointed lead plaintiff. Furthermore, the Court initially received four competing motions, one of which was voluntarily withdrawn. After the Court ordered all movants to meet and confer, a third movant similarly withdrew from consideration. As such, the third motion, filed at Dkt. No. 24 in Case No. 4:24-cv-08874-YGR, is **DENIED.**

[2] All citations to motions filed refer to the docket in Case No. 4:24-cv-08874-YGR, *Wai v. Marqeta, Inc*. unless otherwise specified.

[3] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument. Accordingly, the Court **VACATES** the hearing set for **March 18, 2025**.

### I. CONSOLIDATION

Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Court must decide whether to consolidate the two above-captioned cases prior to selecting a lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Federal courts have "broad discretion . . . to consolidate cases pending in the same district." *Inv'rs. Research Co. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989); *see also* Fed. R. Civ. P. 42(a)(2) (noting that a district court "may" consolidate actions if they "involve a common question of law or fact"). Further, the PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims . . . has been filed . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

The Court concludes that consolidation is warranted here. *Wai* and *Ford* bring claims against the same defendants, and both allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, based upon the same types of alleged misstatements by Marqeta and certain of its senior officers regarding Marqeta's earnings and profit. (*Compare Wai* Compl., Dkt. No. 1, *with Ford* Compl., Dkt. No. 1.) Though the class period in the two actions have different start dates—August 7, 2024 for *Wai* and May 7, 2024 for *Ford*—both class periods end on November 4, 2024, and both putative classes involve, at a minimum, all persons who purchased Marqeta stocks during the relevant class periods. The two actions thus present questions of law and fact that overlap almost completely.[4] Accordingly, the actions are hereby consolidated.[5]

---

[4] *See Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."); *see also Deering v. Galena Biopharma, Inc.*, No. 3:14–cv–00367–SI, 2014 WL 4954398, at *7 (D. Or. Oct. 3, 2014) (where one lawsuit alleged a class period of November 6, 2013–February 14, 2014 and the other four alleged a class period of May 9, 2013–March 17, 2014, "these differences [were] not so great as to affect the consolidation analysis" because "[t]he five actions assert[ed] essentially identical claims based on essentially identical factual allegations").

[5] Defendants move to have the Court consider whether the two actions should be related. (Dkt. No. 37.) The motion is procedurally improper and **DENIED AS MOOT.** The purpose of Civil Local Rule 3-12 is to transfer cases *intra*district from one judge to another to avoid "unduly burdensome duplication of labor and expense or conflicting results if the cases re conducted before

## II.  APPOINTMENT OF LEAD PLAINTIFF

### A. Legal Framework

The PSLRA instructs district courts "to select as lead plaintiff the one 'most capable of adequately representing the interests of class members.'" *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)). The "most capable" plaintiff is generally "the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of [Federal Rule of Civil Procedure] 23." *Id*. "In other words, the district court must compare the financial stake of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on that plaintiff and determine, based on the information [it] has provided in [its] pleadings and declarations, whether [it] satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id*. at 730.

### B. Analysis

While "[t]he Ninth Circuit has declined to endorse a particular method" to determine which party has the greatest financial stake, *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013), it has said that district courts have discretion so long as they "select accounting methods that are both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n.4.

District courts often use the four so-called *Lax-Olsten* factors to identify a movant's financial stake which consider: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re Lyft Sec. Litig.*, 2020 WL 1043628 at *3 (N.D. Cal. 2020) (internal cites omitted). Typically, the fourth factor is considered of paramount importance and "courts often rely on one of two methods for estimating actual economic losses: 1) a 'last in, first out' (LIFO) calculation, or 2) a 'retained shares' calculation." *Retail Wholesale Dep't. Store Union Local 338 Ret. Fund v. Stich Fix, Inc.*, 2023 WL 3613313 at *3 (N.D. Cal. 2023). LIFO "assumes that the first stocks to be sold are those purchased

---

different judges." L.R. 3-12(a)(2).  Here, the undersigned was randomly assigned both cases, thus, no need exists to relate.

3

most recently." *Peters v. Twist Bioscience Corp.*, 2023 WL 4849431 at *2 (N.D. Cal. 2023). By contrast, the retained shares method "looks to the shares retained at the end of the class period that were purchased during the class period and calculates the total net loss on those securities alone." *Markette v. XOMA Corp.*, 2016 WL 2902286 at *5 (N.D. Cal. 2016).

Movants dispute who has the larger financial stake. In their *original* motions, both rely on LIFO, with Dellock averring he suffered losses of "approximately $80,000" and Hogge averring his own losses were $65,119.97. (*Compare* Dkt. No. 20, *with* Dkt. No. 27.) By this metric, Dellock suffered greater loss.[6]

However, in the revised briefing, each movant accuses the other of switching their arguments after seeing the competing analysis. Hogge switched his proffered methodology, presumably upon realizing that under the LIFO method Dellock had the stronger claim. Under the retained shares analysis, Hogge submits that his losses total $84,697, and not $65,119.97. Further, while Dellock's original motion referenced his belief that were the Court to consider the four *Lax-Olsten* factors, he should prevail, Dellock is now silent as to the primacy of these factors, presumably for the same reason Hogge switched his preferred methodology.

"District courts across the country have uniformly disapproved of such gamesmanship in PSLRA lead plaintiff motions, whereby movants revise their loss analysis after seeing what other competing movants have submitted." *Peters,* 2023 WL 4849431 at *4. Thus, since both parties have partaken in such disfavored gamesmanship, the Court must look to other factors to resolve the motions.

First, using the *Lax-Olsten* factors, the Court uses the chart taken from Dellock's follow-up brief to the Court (Dkt. No. 36 at 2) and finds:

One: regarding the number of shares purchased, Hogge exceeds Dellock;

Two: regarding the number of net shares, Hogge exceeds Dellock;

Three: regarding the total net funds expended, Hogge exceeds Dellock; and

Four: regarding the approximate losses suffered Dellock exceeds Hogge.

---

[6] Though both actions define the class period slightly differently, no motion argues that the difference in class period impacts the financial loss analysis.

4

Factors two and three are very close, but Hogge prevails on three of four *Lax-Olsten* factors.

| Movant | Shares | Net Shares | Net Funds Expended | Claimed Loss |
|---|---|---|---|---|
| Mr. Dellock | 70,000 | 70,000 | $348,860 | $79,811 |
| Mr. Hogge | 100,000 | 73,913 | $349,209 | $65,120 |
| Difference | 43% | 6% | 0.1% | 23% |

Second, the Court finds the retained shares method a better measure given the claims alleged. "[C]ourts have noted that the retained shares method works best where there is a relatively constant fraud premium through the class period. In other words, it will most accurately calculate net loss where there are not multiple partial disclosures that reveal the purported fraud during the class period." *Lyft*, 2020 WL 1043628 at *4 (internal cites omitted). The *Wai* and *Ford* complaints allege that the events of a single day caused Marqeta's stock to drop precipitously (*See, e.g., Wai*, Dkt. No. 1 ¶¶ 25-29 (describing a November 4, 2024 press release and "the accompanying November 4, 2024 earnings call" as directly causing the stock price to tumble).) Since the allegations rely, essentially, on a single disclosure of the alleged fraud, retained shares is likely a better method of calculating loss. For these reasons, the Court finds Hogge to be the movant with a greater financial stake.

Next, the Court must determine, based on the information [it] has provided in [its] pleadings and declarations, whether Hogge satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Cavanaugh*, 306 F.3d at 730.

Hogge appears to have made a *prima facie* showing of typicality and adequacy under Rule 23(a). The typicality requirement is readily satisfied as Hogge's claims arise out of the same events and are based on the same legal theories as the claims of other class members. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."). The Court is similarly satisfied that Hogge will adequately represent the interests of class members. Based on the firm resume of Glancy Prongay & Murray LLP ("GPM") (*see* Dkt. No. 21-4), Hogge's attorneys appear competent, there is no suggestion of any antagonistic interests or collusive action, and, as the plaintiff with the highest financial interest, Hogge has a strong

5

incentive to pursue vigorously a substantial recovery for all putative class members. *See Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1135 (C.D. Cal. 1999) ("The Ninth Circuit has held that representation is 'adequate' when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive.") (citing *in re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982)).

Accordingly, the Court finds that Hogge is the appropriate lead plaintiff.

### III.   APPROVAL OF SELECTION OF LEAD COUNSEL

Section 78u-4(a)(3)(B)(v) provides: "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." Here, Hogge has selected GPM to serve as lead counsel. Because Hogge has made a "reasonable choice of counsel," the Court will "defer to that choice." *See Cohen v. U.S. Dist. Court for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009).

### IV.   CONCLUSION

In sum, for the foregoing reasons, the Court **GRANTS** each motion to consolidate the *Wai* and *Ford* actions, **GRANTS** Hogge's motion for appointment as lead plaintiff and for approval of selection of lead counsel, and **DENIES** Dellock's competing request.

The Court thus **CONSOLIDATES** the two actions for all purposes (the "Consolidated Action"), **APPOINTS** Tyler Hogge as lead plaintiff of the Consolidated Action, and **APPOINTS** GPM as lead counsel to represent the putative class in the Consolidated Action. A consolidated complaint shall be filed within **21 days** of this Order and shall conform to this Court's standing order. Responsive pleadings shall be filed within **35 days** thereafter.

The Clerk is directed to consolidate *Wai v. Marqeta, Inc., et al.*, 24-cv-08874-YGR, and *Ford v. Marqeta, Inc., et al.*, 24-cv-08892-YGR, for all purposes. The consolidated action shall be captioned "*In re Marqeta, Inc. Securities Litigation*," 24-cv-08874-YGR. All files shall now be kept in one "lead case" or "master case" file. The Clerk shall also close 24-cv-08892-YGR, and all future filings shall be lodged in 24-cv-08874-YGR. The caption in 24-cv-08874-YGR shall be updated to reflect all the parties who have appeared in both actions. To the extent future cases are

filed that may be related, the parties shall follow the procedures outlined in Civil Local Rule 3-12 to the extent such action is assigned to a different judge. The parties may also file stipulations or motions to consolidate if appropriate.

This terminates Docket Nos. 20, 24, 27, 36, and 37.

**IT IS SO ORDERED**.

Date:  March 11, 2025

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**